IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Case No. 05-cv-01567-WYD-BNB

ARTHUR ASHLEY, an individual on behalf of himself all others similarly situated,
JOE HEATH, an individual on behalf of himself all others similarly situated,
ERNEST MACK, an individual on behalf of himself all others similarly situated,
ROBERT L. PIPER, an individual on behalf of himself all others similarly situated, and
JOSEPH STOGNER, an individual on behalf of himself all others similarly situated,

    Plaintiffs,
v.

REGIONAL TRANSPORTATION DISTRICT AND AMALGAMATED TRANSIT UNION
DIVISION 1001 PENSION FUND TRUST;
BOARD OF TRUSTEES, REGIONAL TRANSPORTATION DISTRICT AND
AMALGAMATED TRANSIT UNION DIVISION 1001 PENSION FUND TRUST;
GREGG FISHER, trustee,
MYRA SIMMONS, trustee,
YVETTE SALAZAR, trustee,
TERESA SEDMAK, trustee,
DAN SUNDQUIST, trustee,
JULIO RIVERA, trustee,
ROSEMARIE SNYDER, trustee,
MICHAEL RUCKER, trustee,
LLOYD MACK, trustee,
LARRY SORGET, trustee, and
EARL NICHOL, trustee.

    Defendants.

---

## ORDER GRANTING FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

---

The Court previously granted preliminary approval of the proposed Class Action

Settlement by Order dated October 31, 2007, as amended November 27, 2007,

reserving final approval until after the Fairness Hearing held on January 29, 2008. After receiving evidence and hearing argument, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

**I. FINDINGS OF FACT**

Sixty-four Plaintiffs brought this action against the Defendants. The Plaintiffs consisted of two groups of individuals: (1) seventeen individuals who retired after the 1998 adoption of an amendment to the terms of the Regional Transportation District ("RTD") and Amalgamated Transit Union Division 1001 Pension Fund Trust ("Retired Plaintiffs"); and (2) forty-seven individuals who have yet to retire and are either still working for RTD or have left employment with the RTD ("Non-Retired Plaintiffs). (Second Am. Compl. ¶¶ 4-67.) The Defendants consist of the following: (1) the Regional Transportation District ("RTD") and Amalgamated Transit Union Division 1001 Pension Fund Trust ("Trust"); (2) the Board of Trustees of the Trust ("Board"); (3) current individual members of the Board of Trustees; and (4) former individual members of the Board of Trustees in 1998. (Second Am. Compl. ¶¶ 68-81.) The Plaintiffs asserted the following six claims for relief against all Defendants: (1) declaratory judgment pursuant to 28 U.S.C. § 2201; (2) violation of 42 U.S.C. § 1983; (3) breach of fiduciary duty; (4) breach of contract; (5) willful and wanton breach of contract; and (6) injunctive relief. (Second Am. Compl. ¶¶ 118-152.)

As a result of a collective bargaining agreement, the RTD and the ATU Local 1001, the union representing RTD's hourly workers ("Union:), created the Amalgamated Transit Union Division 1001 Pension Fund Trust ("Trust"). The Trust holds assets and

pays benefits due under the RTD/ATU Pension Plan ("Pension Plan").  The Pension Plan is primarily funded by contributions from RTD.  The collective bargaining agreement also created a trust for the Board to administer the Plan.  The Board has the authority to amend the Pension Plan.  On September 30, 1997, the Board amended the Pension Plan, with respect to the definition of Final Average Earnings, as that term is defined in the plan documents.

Plaintiffs' claims for relief are all based upon the amendment to the terms of the RTD/ATU Pension plan on September 30, 1997.  The Plaintiffs also allege that this cause of action is substantially similar to a previous case filed in 1998 by two plaintiffs against the same Pension Plan and its Board of Trustees.  *See Walker v. Bd. of Trustees*, 76 F.Supp. 2d 1105 (D. Colo. 1999, *affirmed Walker v. Bd. of Trustees*, 2003 WL 421690534, at 959 (10th Cir. 2003)(unpublished).  Plaintiffs further alleged that even after the Tenth Circuit's holding, the then-current Trustees continued to apply the terms of the Amendment to adversely affect the calculation of their pension amounts.  Consequently, none of the Retired Plaintiffs received pension benefits in accordance with the Plan prior to the Amendment, and none of the Non-Retired Plaintiffs will receive pension benefits in accordance with the plan prior to the Amendment.

The Defendants moved to dismiss the action under Fed.R.Civ.P. 12(b)(1).  By Order dated March 20, 2007, the Court granted in part and denied in part the Motions to Dismiss.  The Court concluded that the Non-Retired Plaintiffs' claims are not ripe and should be dismissed.  The Court further ordered that the Plaintiffs' claims for injunctive relief against Defendants Snyder and Rucker should be dismissed pursuant to

Fed.R.Civ.P. 12(b)(6). The remaining portions of the Motions to Dismiss were denied. (Document No. 113.)

In April of 2007, the parties participated in a two-day mediation with Retired Judge Daniel Hale of the Judicial Arbiter Group. The parties did not reach a negotiated resolution of the case. Then, in July of 2007, counsel for the parties met again and reached a tentative settlement. The terms of the Agreement were embodied in a Term Sheet. (Document No. 196, Exhibit A.) The parties then executed a Settlement Agreement in October 2007. (Document No. 196, Exhibit B.) Pursuant to the parties' agreements, Plaintiffs filed for leave to file a Third Amended Complaint and a Third Amended Complaint, which converted the action into a Class Action, pursuant to Fed.R.Civ.P. 23.

The material terms of the Settlement are as follows. The Settlement Class is comprised of "all participants in the Plan, who currently receive or are entitled to receive pension payments upon retirement, who did not receive any modified benefits after the 10th Circuit's decision in *Walker v. Board of Trustees,* No. 02-1173, 2003 U.S. App. LEXIS 14603 (10th Cir. July 21. 2003), and who accrued a benefit." The Settlement is a non-opt out Class Settlement pursuant to Fed.R.Civ.P. 23(b)(1) and/or (b)(2). The Plan is to be amended to alter the current definition of Final Average Earnings. The Plan, as it currently exists, provides that the pension benefit will be determined based on the highest five years of earnings in Covered Employment at the RTD. As revised, the Plan will provide that pension benefits for all participants who transferred from Covered to Non-Covered employment before June 1, 1999, will be

based on the highest five years in Covered or Non-Covered Employment at the RTD. In most cases, this provides a significant increase in pension benefits, payable at the time of retirement. All members of the Settlement Class benefit from the proposed revision of the Plan, which amends the definition of Final Average Earnings. For all persons who are already retired, they will, if appropriate, receive a True-Up payment of all benefits unpaid to date, after application of the new definition of Final Average Earnings. The Settlement Agreement further provided that all Defendants would receive a full and final release of any and all liability associated with or arising from the Amendment. In order to assure the fairness of this term, the parties agreed to the retention of an independent fiduciary to approve the Settlement terms. The Settlement Agreement provided that Appointed Counsel would file a petition for an award of attorneys' fees in an amount not to exceed $800,000 and the Defendants agreed not to oppose that application. (Document No. 196, Exhibit B.)

On October 31, 2007, the Court entered an Order granting preliminary approval of the Settlement. (Document No. 198.) In the Order, the Court held that Plaintiffs' Counsel should serve as Appointed Counsel to represent the Settlement Class. In the Order, the Court required Plaintiffs' counsel to give notice to all potential Settlement Class Members using the Notice of Class Action Settlement approved by the Court. Additionally, the Court required Plaintiffs' counsel to establish a publicly accessible website and to post relevant documents concerning the proposed Class Action Settlement on the website. The Court further ordered a Fairness Hearing to be set for January 29, 2008. According to the Court's Order, all objections had to be filed on or

before January 15, 2008 and all responses thereto had to be filed on or before January 22, 2008.  Finally, the Court ordered Plaintiffs' counsel to submit a petition for award of attorneys' fees on or before December 29, 2007, later extended to January 7, 2008.  On November 27, 2007, the Court amended the Order to include Larry Sorget as a settling defendant.

On January 7, 2008, Appointed Counsel timely filed the Petition for Attorney Fees.  On January 10, 2008, the Court received an objection to the Class Action Settlement from Mr. Thomas Beavers.  On January 16, 2008, all Parties received a copy of the Report of the Independent Fiduciary, Norman P. Goldberg, United States Trust Company, N.A.  Mr. Goldberg concluded that the Settlement is reasonable in light of the likelihood of a full recovery to the Plan and, further, that the Plan should execute the required releases.  On January 28, 2008, the Court received correspondence from an individual named George Parks, who sought to make a claim for benefits under the Settlement.

On January 29, 2008, the Court convened a Fairness Hearing, to consider the following issues:

1. Whether the *Settlement* should be approved as fair, reasonable and adequate;

2. Whether the litigation should be dismissed with prejudice as to the *Defendants* pursuant to the terms of the *Settlement*;

3. Whether the *Notice of Class Action Settlement*, summary notice and notice methodology implemented pursuant to the *Settlement Agreement* (*I*) constituted the best practicable notice; (*ii*) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the *Settlement Class* of the pendency of the litigation, their right to object

       to the *Settlement*, and their right to appear at the *Fairness Hearing*;
(*iii*) were reasonable and constituted due, adequate and sufficient notice
to all persons entitled to notice; and (*iv*) met all applicable requirements of
the Federal Rules of Civil Procedure, and any other applicable law;

4. Whether *Appointed Counsel* adequately represented the *Settlement Class* for purposes of entering into and implementing the *Settlement Agreement*;

5. Whether the *Plan Amendment* should be approved;

6. Whether the application for attorneys' fees and costs filed by *Appointed Counsel* should be approved; and

7. Whether the application for retirement benefits for Named Plaintiffs should be approved.

The Court heard argument and took evidence on the afore-mentioned issues from Appointed Counsel for the Plaintiffs and from counsel for the Defendants. No person appeared to argue against the Settlement.

## II. <u>**CONCLUSIONS OF LAW**</u>

The court has broad discretion in deciding whether to grant approval of a class action settlement. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). "In exercising its discretion, the trial court must approve the settlement if it is fair and reasonable." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997), citing *Jones*, 741 F. 2d at 324.

In making the determination whether to approve a class action settlement, the court should "not decide the merits of the case or resolve unsettled legal questions. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). "This is because the essence of settlement is compromise, and settlements are generally favored." *Wilkerson,* 171

F.R.D. at 284, *citing Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910). The object of settlement is to avoid, not confront, the determination of contested issues: therefore, the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Instead, courts have consistently held that the function of a judge reviewing a settlement is to determine whether the proposed settlement is fundamentally fair, adequate and reasonable, not to rewrite the settlement agreement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### A. Notice to the Settlement Class

The first issue to be addressed is the adequacy of notice to the Settlement Class. "Under Fed. R. Civ. P. 23(e)(1)(B), a district court approving a class action settlement must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *DeJulius v. New Eng. Health Care Emples. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). "In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement." *Id.* at 943-44. Generally, the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort if necessary.

According to the case law established by the federal courts, the law requires "adequate notice, not perfect notice." *Uhl v. Thoroughbred Tech. & Telecomms. Inc.*, 2001 U.S. Dist. LEXIS 13115 (D. Ind. 2001). Here, the administrator of the Pension

Plan identified 208 individuals as potential Settlement Class members.  In accordance with the Court's Order of October 31, 2007,  as amended November 27, 2007, Appointed Counsel timely mailed individual notices to each of them.  Of those notices mailed, 204 were delivered successfully while four notices were returned.  Additionally, Appointed Counsel established a website and posted all relevant documents to the site, thereby providing additional notice to individuals who desired notice of the Settlement.

Under these circumstances, the Court finds that the notice given to the Settlement Class is adequate for purposes of this Class Action Settlement.

### B. Analysis of the Class Action Settlement

The Tenth Circuit has outlined four non-exclusive factors to be considered in assessing whether a proposed settlement of a class action is fair, reasonable, and adequate:

1. Whether the proposed settlement was fairly and honestly negotiated;

2. Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

3. Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

4. The judgment of the parties that the settlement is fair and reasonable.

*In re Qwest Communs. Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039 (D. Colo. 2006), *citing Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

In making this determination,

> the district court must independently analyze the evidence before it in making its determination; it may not rely solely upon the assertions of the proponents of the settlement as to what the evidence shows. (See Appellants' Reply Brief at 4 (quoting 1 H. Newberg & A. Conte, Newberg on Class Actions 3d, 11.14)). It is the responsibility of the proponents of the settlement to provide sufficient evidence to support a conclusion that the settlement is fair, and where the proponents have failed in this regard, the district court may be justified in requiring more evidence, or in declining to approve the settlement.

*Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), *overruled on other grounds* *Devlin v. Scardelletti*, 536 U.S. 1, 6 (U.S. 2002).

### 1. Whether the proposed settlement was fairly and honestly negotiated

With respect to this factor, the Court must first be concerned with the protection of class members whose rights may not have been given "adequate consideration during the settlement negotiations." *Wilkerson*, 171 F.R.D. at 283; See also 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 1979,1 (2d ed. 1986 &. 2001 Supp.). The Court is also required to "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *United States v. Colo.*, 937 F.2d 505, 509 (10th Cir. 1991). The fairness of the negotiating process is to be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983), *cited in Johnson v. City of Tulsa*, 2003 U.S. Dist. LEXIS 26379, * (D. Okla. 2003); *Wilkerson,* 171 F.R.D. at 284.

Here, the parties conducted extensive discovery which is sufficient to evaluate the merits of the claims and defenses as well as the efficacy of settlement. This case has been on file since 2005 and both Plaintiffs and Defendants had competent and seasoned attorneys who conducted this litigation vigorously. With respect to pre-trial discovery, more than 25 depositions were taken, including those of the retired Plaintiffs and certain of the named Defendants. The parties exchanged thousands of pages of documents in response to requests for production of documents. Additionally, the parties filed extensive briefing with respect to the legal rights and obligations of the parties in response to Defendants' Motions to Dismiss the action, which the Court has resolved.

With respect to settlement discussions, counsel for the parties held numerous settlement discussions and at least 3 separate meetings to discuss settlement in the early stages of the case. Additionally, the parties participated in a settlement mediation conference at the offices of the Judicial Arbiter Group, which mediation lasted approximately two days, with Retired Judge Daniel Hale serving as the mediator. After the mediation proved unsuccessful, the parties convened yet another settlement meeting at the office of Burg Simpson and were finally able to reach an agreement. The negotiations regarding the terms of the settlement took place over a 4 month period, finally resulting in the Settlement Agreement.

Under these circumstances, the Court concludes that the settlement was fairly and honestly negotiated. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006), citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.), *cert. denied*

*sub nom.*, *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044 (2005).

### 2. Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.

In determining whether questions of law and fact exist, the Court is not to evaluate the merits of the claims." This factor requires an examination of whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt. The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Communs. Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039 * (D. Colo. 2006).

As developed through the briefing on the Motions to Dismiss, Plaintiffs have asserted both evidence and law to support the claims set forth in the complaints. However, there is risk in any litigation, particularly when the litigation is complex and involves numerous parties. This case was originally brought on behalf of 64 individuals and appears to involve as many as 208 individuals. The events underlying the Plaintiffs' claims go back more than 16 years and the recollections of the individuals involved vary about the events in question. Moreover, the Plaintiffs must defend their claims against numerous defendants represented by different attorneys.

All of the Defendants have forcefully defended their actions with respect to the handling of the adoption of the Amendment. Defendants are also represented by highly experienced and competent counsel. By negotiating the settlement involved herein, Defendants' counsel have found a way to resolve litigation and claims that

could span another 15 years into the future, as additional Plaintiffs retire and qualify for benefits. Additionally, it favorably resolves the claims of individuals who could not or did not participate as Plaintiffs when the suit originally began.

Accordingly, the Settlement should be regarded as highly favorable to all involved, and the second factor has been satisfied.

### 3. Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation

"As to the third factor, the 'value of an immediate recovery' means 'the monetary worth of the settlement.'" *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997). At the present time, the Settlement has a present value of approximately $4.8 million dollars to the Settlement Class. This amount is comprised of immediate cash payments to be made to some or all of the Retirees (estimated to be approximately $284,000) and $4.5 million in long term benefits to be paid out as Settlement Class members in the Plan retire. The present value of the Settlement for pension benefits does not have a material adverse impact on the Pension Plan as the present value is approximately 0.25% of the value of the plan's assets as of January 25, 2008. The resolution of this litigation also has a public benefit, in that it demonstrates fairness in how the Settlement Classes' claims were handled.

In contrast to the immediate relief afforded by the settlement, it would in all probability take many years to litigate the case and resolve all appeals. If the settlement is not approved, the case will be returned to its posture as of July 31, 2007. There are at least 20 Plaintiffs who would be able to proceed with the claims

immediately and litigation would begin again. A trial in this matter would likely take two months of trial time and appeals of any decision would likely take several years. Additionally, for each Plaintiff who is still actively employed, their claims would not ripen until retirement. At that time, they could bring claims against the Plan, to seek to recover the benefits provided in this litigation. At least 100 individuals likely fall within this category. Since many of those individuals will not retire for many years, the Plan could be looking at 15 or more years of litigation.

Balancing the benefits of immediate settlement versus the costs of protracted litigation, I find that the third element is satisfied.

### 4. The judgment of the parties that the settlement is fair and reasonable

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006); *Marcus v. Kansas Dept. of Revenue*, 208 F. Supp.2d 1179, 1183 (D. Kan. 2002). Here, counsel for Plaintiffs and Defendants have arrived at an arms' length negotiated settlement which provides benefits to both Plaintiffs and Defendants alike. Indeed, by virtue of the Settlement, persons not originally parties to the action will receive substantial benefits. Moreover, no Plaintiff is being singled out for treatment that is more favorable than that afforded to every other similarly situated Class Member.

Under these circumstances, the fourth element is established as well.

In summary, based upon the totality of the evidence offered with respect to each of the four factors identified by the 10th Circuit, *see Rutter & Wilbanks Corp.,* 314 F.3d at 1188, the Court concludes that the Class Action Settlement is fair, reasonable and

adequate.

### C. Objections to the Settlement

One individual objected to the proposed Class Action Settlement by filing a timely objection during the time provided for by the Court's Order. From the substance of the objection, it appears that the objecting individual misperceives the basis for the payments to be made pursuant to the settlement and has not addressed the actual terms of the settlement. The Court also finds it noteworthy the fact that no other individuals have objected to the Settlement. Had a number of individuals come forward to object, the Court might be inclined to give the objection more weight, but that did not happen. Accordingly, the Court does not find the objection persuasive and declines to reject the Class Action Settlement on that basis.

### D. Petition for Attorney Fees

Pursuant to the Settlement Agreement, Appointed Counsel has submitted an unopposed Petition for Attorney Fees in the amount of $800,000. Exhibit A, *Settlement Agreement,* ¶¶ 2.1.4, 10.1. Appointed Counsel has not sought and will not seek to recover any litigation costs. For the reasons stated herein, the Court approves the Petition.

Absent an express statute, court rule or private agreement to the contrary, attorneys' fees generally are not recoverable by the prevailing party in a contract or tort action. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y.*, 421 U.S. 240, 247 (1975). Here, the parties entered into an agreement with respect to attorney fees in the Settlement Agreement.

### 1. The Amount of Fees Sought is Reasonable as a Percentage Award or Using the Lodestar/Multiplier Method.

Notwithstanding the agreement of the parties, the Court is obligated to determine that the fees sought were reasonably and necessarily incurred in the litigation. Two different methods are generally used to determine the attorney fee awarded in a class action settlement. *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1269 (D. Kan. 2006). The Court may award a percentage of a common fund, if one is achieved. *Id.* In cases before the 10th Circuit, reasonable and acceptable fee awards based upon common fund have ranged from 13% to 22.5%. *Saul v. Plaintiffs' Steering Comm. (In re Copley Pharm., Inc.)*, 2000 U.S. App. LEXIS 25245 (10th Cir. 2000) (13%); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994)(22.5%).

Alternatively, the Court may award a fee based on the lodestar amount with a multiplier. A "lodestar" fee is the preliminary calculation to be made by the district court and is the product of the reasonable hourly rate set by the court multiplied by the number of hours reasonably necessary for the case. The lodestar figure may be adjusted to suit the particular circumstances of the case, especially where the degree of success achieved is exceptional. *Roe v. Cheyenne Mt. Conf. Resort*, 124 F.3d 1221, 1233 n.8 (10th Cir. 1997). The multiplier varies depending on the facts and circumstances of a particular case. *E.g., Connolly v. Harris Trust Co. of Ca.(in Re Miniscribe Corp.)*, 309 F.3d 1234, 1238 (10th Cir. 2002) (lodestar multiplier of 3.5%); *see also, Brody v. Hellman*, 167 P.3d 192, 202 (Colo. App. 2007) (lodestar multiplier of 2.3% held reasonable). Either of these calculations may be cross checked against the amount that counsel normally would have recovered on any other reasonable basis.

### a. The Percentage Award

Here, no common fund has been created. However, the Court has the discretion to consider a percentage award if appropriate under the circumstances. In this case, the present value of the settlement is approximately $4.8 million dollars, comprised of the True Up payments (the difference between the amounts paid to Retirees and those payable under the terms of the Amended Plan) and the increase in value of the pension payments to be made in the future. The True Up payments to be made to retirees total approximately $300,000. The increase in benefits to all Plaintiffs is presently worth approximately $4.5 million. To the extent that this could be deemed to be in the nature of a common fund recovery, the fee of $800,000 is slightly less than 17% of the total settlement value, well within the range approved in other cases.

### b. The Lodestar Method

Similarly, the lodestar with multiplier method shows that the fees sought are reasonable. Counsel have attached detailed time and billing records to show the time incurred and the tasks performed on an item by item basis.

Appointed Counsel has established the rates generally sought and recovered in Mass tort/Class Action cases. While the Court initially perceived the hourly rates to be high, in comparison to rates in the Denver market, counsel established to the Court's satisfaction that the rates are reasonable for the type of work involved. Accordingly, the Court approves the lodestar amount of $611,495. Appointed counsel seeks the use of a multiplier of 1.3. Based upon prior orders entered and upheld in this District, the multiplier is also reasonable, particularly in light of the value of the settlement obtained.

Finally, the Court is persuaded to award these fees based upon the fact that the amounts will be paid by Federal Insurance Company, rather than from the Pension Plan or any other fund responsible to pay benefits to the Participants in the Plan.

Accordingly, whether judged by the percentage method or the lodestar/multiplier method, the amount of fees sought is reasonable.

### 2. The Fees Sought are Reasonable Pursuant to *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

Just as with all fee awards, the district court has the discretion to award reasonable and necessary fees even if the parties have agreed to a particular fee pursuant to a settlement. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). To determine reasonableness, federal courts rely heavily on the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Those factors are:

> the time and labor required, the novelty and difficulty of the question presented by the case, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorneys due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, any time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases.

*Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994), *citing Johnson*, 488 F.2d at 717-19. Applying these factors, the fee of $800,000 is reasonable under the circumstances. The Court hereby adopts the analysis with respect to these factors set forth in the Petition.

-18-

### III. CONCLUSION

Based upon the foregoing, it is:

ORDERED that the Settlement is approved as fair, reasonable and adequate; it is

FURTHER ORDERED that the Settlement is approved as a non-opt out Class Settlement pursuant to Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(b)(1) and/or (b)(2); it is

FURTHER ORDERED that the Plan Amendment is approved; it is

FURTHER ORDERED that the application for attorneys' fees and costs filed by Appointed Counsel is approved; and it is

FURTHER ORDERED that the litigation is **dismissed with prejudice** as to the Defendants pursuant to the terms of the Settlement.

Dated: February 11, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge